## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRIAN C. HUFFMAN**<br>3968 Estepona Avenue<br>Doral, FL 33178<br><br>　**Plaintiff,**<br><br>　v.<br><br>**THE HONORABLE JEH JOHNSON**<br>Secretary of Homeland Security<br>Department of Homeland Security<br>245 Murray Lane SW<br>Washington, DC 20528-0075<br><br>　**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No._____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Petty Officer Third Class Brian C. Huffman, by and through undersigned counsel, files this Complaint against the Secretary of Homeland Security, Jeh Johnson, in his official capacity, alleging as follows:

### Parties

1. Plaintiff Petty Officer Third Class ("MK3") Brian C. Huffman is a former active-duty service member in the United States Coast Guard ("USCG").

2. Defendant Jeh Johnson is the Secretary of Homeland Security and is named in his official capacity as the head of the Department of Homeland Security ("DHS") with the authority to correct any USCG military record.

### Jurisdiction and Venue

3. This action seeks review of the decisions of the USCG Board for Correction of Military Records' ("BCMR") final decision denying MK3 Huffman's application for the

Correction of his USCG records. The BCMR's decisions were arbitrary, capricious, contrary to law, and an abuse of discretion.

4. The BCMR's decisions were final agency decisions under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a case arising under the laws of the United States. The relief requested herein is authorized under the APA and the Constitution of the United States.

6. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is the judicial district in which Defendant Secretary Johnson is located and is where a substantial part of the events or omissions giving rise to the claim occurred.

7. In accordance with 28 U.S.C. § 2401(a), this action is brought within six years of the BCMR's final decision.

## Factual Background

8. On July 27, 1999, MK3 Huffman enlisted in the USCG in Cleveland, Ohio.

9. MK3 Huffman was stationed at USCG Marblehead ("Marblehead") in Ohio from October 1999 until March 2001.

10. Thereafter, MK3 Huffman went to USCG's machinery technician school in Yorktown, Virginia. Within eight months of graduating from machinery technician school, MK3 was promoted to Petty Officer Second Class/E-5 ("MK2").

11. In 2001, the USCG stationed MK3 Huffman in Miami at the Naval Engineer Support Unit as a Machinery Technician, where he served until 2005.

12. In 2005, MK3 Huffman voluntarily deployed to Kuwait and Bahrain.

13. In January 2006, MK3 Huffman was stationed at the USCG Sitkinak ("Sitkinak") in Miami, Florida.

14. In June 2006, MK3 Huffman was selected as Sailor of the Quarter, which recognized and awarded MK3 Huffman's outstanding performance and dedication. MK3 Huffman received above average, excellent, and superior marks in his 2006 performance evaluations. He was also recommended for advancement to a Petty Officer First Class/E-6 ("MK1").

15. In December 2006, Florida authorities arrested MK3 Huffman based upon an allegation of a domestic altercation with his wife.[1]

16. As a response, on December 29, 2006, MK3 Huffman's Commanding Officer ("CO") Lieutenant Mark Glancy issued a 30-day no contact order prohibiting MK3 Huffman from contacting his wife, except during mandated Employee Assistance Program ("EAP") counseling sessions.

17. In January 2007, the state of Florida lifted the restraining order it imposed as a result of the accusations against MK3 Huffman. As a result of the lift of the restraining order, MK3 Huffman began communicating with his wife with an understanding from LT Glancy that the military no-contact order would be lifted.

18. Also in January 2007, the Family Advocacy Specialist (FAS) sustained domestic violence allegations against MK3 Huffman and provided its report to MK3 Huffman's command. While FAS' letter to command provided that MK3 Huffman had fifteen days to respond to the FAS report, MK3 Huffman's command *never* gave the letter or report to MK3 Huffman so that he could exercise his right to challenge the report's findings. Rather than providing MK3 Huffman his opportunity to respond, the FAS report was sent to a number of

---

[1] MK3 Huffman and his wife divorced in August 2007.

Florida state agencies and MK3 Huffman was required to attend domestic violence intervention classes. The command's denial of MK3 Huffman's right to respond and rebut the allegations severely prejudiced him, as the state of Florida ultimately dismissed all charges against MK3 Huffman on February 13, 2007.

19. On February 1, 2007, LT Glancy renewed his December 29th no contact order.

20. On February 13, 2007, the state of Florida dropped all charges against MK3 Huffman. As a result, MK3 Huffman's EAP counselor recommended LT Glancy rescind the no contact order.

21. On March 8, 2007, MK3 Huffman received a non-judicial punishment ("NJP") for failing to obey the no contact order in January. LT Glancy placed MK3 Huffman on performance probation, which provided MK3 Huffman an opportunity to resolve any deficiencies in his performance. Prior to the NJP, MK3 Huffman had no documented deficiencies under his command at USCG Sitkinak.

22. As a result of the NJP, MK3 Huffman was reduced in rank from a MK2 to a MK3.

23. Notably, MK3 Huffman was on the advancement list with promotion to MK1/E-6 guaranteed. The NJP resulted in his removal from the advancement list, and thus, had the effect of demoting him two pay grades.

24. On March 14, 2007, LT Glancy rescinded the no contact order. LT Glancy instructed MK3 Huffman to continue the EAP program.

25. Despite having EAP counseling every Saturday and having medical restrictions for boat and sea duty, between March 20, 2007 and April 8, 2007, MK3 Huffman received the following reprimands: (1) a Performance & Discharge Administrative Remarks ("Page 7") and a NJP for not reporting for duty on April 7, 2007; (2) a Page 7 for failure to follow military

customs and courtesies when addressing a Chief Petty Officer; and (3) a Page 7 for refusing to board the cutter.

26. On April 17, 2007, LT Glancy notified MK3 Huffman he was being processed for discharge due to his violation of the no contact order, additional Page 7 and NJPs, and his alleged disrespectful and questionable moral character.

27. The discharge notification informed MK3 Huffman of his "right to submit a statement on your own behalf" and "the opportunity to consult with a lawyer."

28. The discharge notification also provided that if MK3 Huffman desired to submit a written statement, he should provide it to LT Glancy "not later than three working days from" April 17, 2007.

29. The same day MK3 Huffman received the notification of discharge, LT Glancy submitted a request for discharge authority to the Coast Guard Personnel Command to discharge MK3 Huffman.

30. Sector Chief of Logistics Commander Helen Toves was tasked with handling the paperwork of MK3 Huffman's discharge and she endorsed LT Glancy's request on April 17, 2007.

31. When MK3 Huffman's acknowledgment form of the notification of discharge was submitted to Personnel Command on April 17, 2007, Personnel Command advised Commander Toves to be sure that MK3 Huffman knew he had <u>five days</u> from the date of notification of discharge to submit his written statement.

32. MK3 Huffman was never advised he had five days to respond to the notification of discharge.

33. On April 19, 2007, two days after notifying MK3 Huffman of the discharge, Commander Toves sent an email to the Personnel Command requesting discharge orders for MK3 Huffman and submitted a discharge package to Personnel Command without any statement by MK3 Huffman.

34. At this time, MK3 Huffman had not consulted with an attorney and only two days had passed since MK3 Huffman received the notification of discharge.

35. Later that day, MK3 Huffman submitted his discharge rebuttal statement without the benefit of conferring with counsel.

36. Attorneys MK3 Huffman spoke to were unable to assist him by the three-day deadline imposed by LT Glancy to respond to the discharge.

37. On April 20, 2007, three days after MK3 Huffman received notification of the discharge, separation orders were issued for MK3 Huffman.

38. On April 23, 2007, MK3 Huffman was separated from the USCG with a general discharge, RE-4 reenlistment code (ineligible to reenlist), a JKA "Pattern of Misconduct" separation code, and a pattern of misconduct narrative.

39. As a result of his separation, MK3 Huffman did not receive the final two payments of $2,120.30 of his enlistment bonus totaling $4,240.60.

40. At the time of separation, MK3 Huffman had seven years and nine months of service. When a member reaches eight years of service, he or she is entitled to an Administrative Separation Board. Because MK3 Huffman was a few months away from eight years of service, he did not receive the benefit of an Administrative Separation Board.

41. MK3 Huffman submitted an application to the Discharge Review Board ("DRB"). The DRB found MK3 Huffman's discharge and separation was proper and equitable and recommended his request for relief be denied.

42. However, on November 12, 2008, the Vice Commandant of the USCG disapproved of MK3 Huffman's discharge proceedings and the DRB's recommendations.

43. Upon review of MK3 Huffman's discharge, the Vice Commandant of the USCG upgraded MK3 Huffman's discharge to honorable and changed the narrative reason to miscellaneous/general reasons due to procedural flaws in the original discharge. A new DD-214 was issued reflecting these changes.

44. In early 2009, MK3 Huffman filed an application with BCMR requesting a change in the reenlistment code from RE-4 (ineligible to reenlist) to RE-1 (eligible to reenlist) and his rank be returned to MK2/E-5. The BCMR denied his request for relief.

45. MK3 Huffman filed a request for reconsideration to the BCMR, which the BCMR also denied in May of 2010.

46. Concerning the procedures utilized by the USCG in discharging MK3 Huffman, the BCMR found:

> The CO first notified the applicant of the proposed discharge on a Page 7 dated April 16, 2007, but in his notification memorandum dated April 17, 2007, the CO gave the applicant three calendar days to submit his statement. However, an email from the Personnel Command dated April 17, 2007 indicates that the applicant should have had five days. Despite this information, the CO prepared his request for discharge and the Sector Chief prepared her endorsement on April 17, 2007, and they apparently forwarded the discharge package to the Personnel Command on April 19, 2007—only two days after the applicant was told that he would have three days to submit his statement. Therefore, it appears that the applicant may have been mislead about how long his "opportunity" to submit his discharge rebuttal would be. . . . Although the applicant dated his rebuttal statement April 19, 2007,

      it appears that the Personnel Command may not have received it
nor reviewed it before issuing the discharge orders on April 20, 2007.

47. The BCMR also found MK3 Huffman's statement was not listed as an enclosure to LT Glancy's memorandum and is not included in the "discharge packet" in MK3 Huffman's military record.

48. Despite the foregoing, the BCMR was "not persuaded that his discharge was wrong" and found MK3 Huffman did not prove by a preponderance of the evidence that his RE-4 reenlistment code is erroneous or unjust.

49. On September 22, 2015, MK3 Huffman filed a reconsideration of the BCMR's May 2010 decision based upon newly discovered evidence and included new evidence concerning the validity of his separation from the USCG.

50. On October 29, 2015, the BCMR denied MK3 Huffman's request for reconsideration of its prior decision.

## FIRST CAUSE OF ACTION
**The USCG's Separation of MK3 Huffman Violated Applicable USCG Rules, Regulations, and Policies**

51. The averments of the preceding paragraphs are incorporated as if fully set forth herein.

52. The BCMR's determination MK3 Huffman's separation was not wrong, unlawful, in error, or unjust was in violation of USCG rules, regulations, and policies.

53. First, when discharged, MK3 Huffman did not have an opportunity to consult with counsel.

54. Upon recommendation for discharge of a member the command must, "[a]fford the member an opportunity to consult with a lawyer as defined by Article 27(b)(1), UCMJ, if contemplating a general discharge [characterization]. If the member requests counsel and one is

not available, the commanding officer must delay discharge proceedings until such time as counsel is available." COMDTINST M1000.4 Art.12(B)(17)(e)(3).

55. MK3 Huffman was notified of the proposed discharge on April 17, 2007. Upon notification, MK3 Huffman requested a lawyer.

56. On April 19, 2007, Commander Toves sent an email to Personnel Command stating that MK3 Huffman had consulted with an attorney. This email was sent despite Commander Toves' knowledge that MK3 Huffman had not consulted with an attorney.

57. MK3 Huffman's rebuttal statement specifically provided he did not have an opportunity to consult with an attorney.

58. No attorneys were available to assist MK3 Huffman, given the short and erroneous timeline for response provided to MK3 Huffman.

59. The discharge proceedings were not delayed until such time for MK3 Huffman to be able to consult with an attorney concerning his discharge.

60. Upon information and belief, the discharge proceedings were not delayed in order to deprive MK3 Huffman of an Administrative Separation Board that he would be entitled to if the command did not implement and execute discharge proceedings to separate him when it did. An Administrative Separation Board would have entitled MK3 Huffman to a hearing, additional time, and opportunities to call witnesses and further challenge the allegations against him that he contests.

61. Second, MK3 Huffman was not provided the requisite amount of time required to respond and was intentionally mislead about how long his opportunity to submit his written discharge rebuttal would be.

62. Personnel Command emailed the command to notify MK3 Huffman should have five days to respond to the discharge. However, MK3 Huffman was given three days to respond and never advised he had five days to respond to the discharge.

63. Third, MK3 Huffman was separated while on performance probation in violation of the USCG's policies and procedures.

64. COMDTINST M1000.4 12(B)(18)(c) states that commanding officers will not initiate administrative discharge action until they have afforded a member a reasonable probationary period to overcome any deficiencies.

65. On March 8, 2007, LT Glancy placed MK3 Huffman on performance probation.

66. LT Glancy initiated a discharge of MK3 Huffman on April 17, 2007—only a month and a half after MK3 Huffman was placed on performance probation. Therefore, MK3 Huffman was not afforded a reasonable opportunity to overcome any deficiencies LT Glancy perceived.

67. Fourth, MK3 Huffman was separated without the USCG considering his statement.

68. Commander Toves proceeded with the discharge without reading or considering MK3 Huffman's statement. She initiated the discharge within <u>48 hours</u> of MK3 Huffman's receipt of his notification of discharge, despite knowing he should have five days to respond, and at the very least, three days.

69. Pursuant to USCG policies and procedures, Commander Toves and LT Glancy were required to include MK3 Huffman's statement as an enclosure in the discharge package forwarded to Personnel Command on April 19, 2007.

70. MK3 Huffman's timely and properly submitted statement is not listed as an enclosure in the request for discharge.

71. MK3 Huffman's statement was also not included in the "discharge packet."

72. At the time MK3 Huffman submitted his statement, the decision to separate him had already been made.

73. Commander Toves' failed to provide MK3 Huffman with any due process.

74. Based on the foregoing, MK3 Huffman is entitled to relief under 5 U.S.C. §§ 702 and 706(2)(a).

## SECOND CAUSE OF ACTION
### The USCG's Separation of MK3 Huffman Violated The Constitution

75. The averments of the preceding paragraphs are incorporated as if fully set forth herein.

76. The BCMR's determination MK3 Huffman's separation was not wrong, unlawful, in error, or unjust was in violation of well-established constitutional protections due to MK3 Huffman under the Fifth and Fourteenth Amendments.

77. The USCG's actions against MK3 Huffman infringed upon his protected liberty and property interests.

78. Constitutional due process protections were required in the USCG's discharge and separation of MK3 Huffman.

79. The USCG deprived MK3 Huffman a constitutionally-protected liberty interest.

80. MK3 Huffman has a liberty interest in not being improperly separated and demoted in rank and pay.

81. MK3 Huffman has a liberty interest in his good name, reputation, and integrity. MK3 Huffman's separation led to a continuing stigma or disability that has foreclosed his freedom to take advantage of other employment opportunities.

82. MK3 Huffman has a legitimate claim of entitlement to his liberty interest.

83. The USCG also deprived MK3 Huffman a constitutionally-protected property interest.

84. MK3 Huffman had a property interest in his continued employment with the military.

85. MK3 Huffman had a property interest in not being denied a benefit of his enlistment contract and correct pay.

86. MK3 Huffman has a legitimate claim of entitlement to his property interest.

87. The procedures the USCG employed in discharging and separating MK3 Huffman were constitutionally insufficient and without due process of law. MK3 Huffman was denied liberty and property interests required by the Fifth and Fourteenth Amendments. When MK3 Huffman received his notification of discharge, he had a statutory right to counsel. However, the USCG denied MK3 Huffman the opportunity to consult with a lawyer prior to discharging MK3 Huffman.

88. The USCG did not provide MK3 Huffman an opportunity to respond to the proposed discharge.

89. MK3 Huffman was denied an opportunity to be heard in a meaningful time and in a meaningful manner.

90. The USCG's decision was made before the deadline it imposed on MK3 Huffman to submit a written response.

91. The USCG's decision was made before it reviewed and considered MK3 Huffman's written response.

92. The USCG procedures in discharging and separating MK3 Huffman did not comport with due process.

93. The USCG's failure to follow its policies, procedures, and regulations that implicate protected liberty and property interests was a due process violation.

94. The USCG's separation of MK3 Huffman is void because it ignored procedural rights and regulations, exceeded applicable statutory authority, and violated minimum concepts of basic fairness.

95. Based on the foregoing, MK3 Huffman is entitled to relief under 5 U.S.C. §§ 702 and 706(2)(a).

## THIRD CAUSE OF ACTION
### The BCMR's Decision To Not Correct MK3 Huffman's Record Was Arbitrary, Capricious, and an Abuse of Discretion

96. The averments of the preceding paragraphs are incorporated as if fully set forth herein.

97. The BCMR's decision to not provide MK3 Huffman complete relief for his unlawful separation was arbitrary, capricious, and an abuse of discretion.

98. The USCG has acknowledged its discharge and separation of MK3 Huffman did not comply with required procedures.

99. Upon reviewing MK3 Huffman's DRB request, USCG Vice Commandant disapproved of the DRB's proceedings and recommendations because of a "procedural flaw in MK3 Huffman's discharge."

100. Due to this procedural flaw, the Vice Commandant ordered a change of MK3 Huffman's separation code and character of service.

101. The Vice Commandant did not order a change in MK3 Huffman's reentry code.

102. Recognizing the procedural errors in the USCG's discharge and separation of MK3 Huffman and providing some, but not all, relief is arbitrary and capricious.

103. The deficiencies of the proceedings rendered all actions in MK3 Huffman's separation void.

104. A determination that MK3 Huffman's discharge process was procedurally deficient requires complete relief and voids all decisions made in the separation of MK3 Huffman.

105. The decision did not rectify the error and injustice MK3 Huffman sustained by the lack of due process in his discharge process is arbitrary and capricious.

106. Based on the foregoing, MK3 Huffman is entitled to relief under 5 U.S.C. §§ 702 and 706(2)(a).

## RELIEF SOUGHT

WHEREFORE, Plaintiff MK3 Huffman prays that this honorable Court enter judgment in his favor, and:

a. Determine that the BCMR's decisions were contrary to law, arbitrary, capricious, and/or an abuse of discretion under the APA;

b. Determine that the BCMR's decisions violated the Constitution;

c. Order the USCG to upgrade MK3 Huffman's RE-4 reenlistment code;

d. Payment of MK3 Huffman's remaining enlistment bonus of $4,2340.60;

e. Restore MK3 Huffman to active duty with all back pay, entitlements and credit for time served;

f. Award MK3 Huffman incurred reasonable attorney's fees and costs in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412; and

g. Grant such other and further relief as this honorable Court deems just and proper to afford full and complete relief.

Dated:  May 6, 2016                                             Respectfully submitted,

 

_____
Eric S. Montalvo
THE FEDERAL PRACTICE GROUP
WORLDWIDE SERVICE
1750 K St., N.W., Suite 900
Washington, D.C. 20006
(202) 862-4360 Telephone
(888) 899-6053 Facsimile
emontalvo@fedpractice.com
D.C. Bar No. 993206

*Attorney for Plaintiff*