# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIAN C. HUFFMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 16-861 (RBW) |
| | ) |
| JOHN KELLY,[1] | ) |
| Secretary of Homeland Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Brian Huffman, seeks judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706 (2012), of a decision by the United States Coast Guard Board for Correction of Military Records (the "Board") denying his application to upgrade his reenlistment code and his rank after he was involuntarily discharged from the United States Coast Guard (the "Coast Guard"). See Complaint ("Compl.") ¶¶ 3, 37, 44. Currently before the Court is the Defendant's Motion to Dismiss and for Summary Judgment ("Def.'s Mot.") and the Plaintiff's Cross-Motion for Summary Judg[]ment and Opposition to Defendant's Motion to Dismiss and Defendant's Motion for Summary Judgment ("Pl.'s Mot."). Upon careful consideration of the parties' submissions and the administrative record in this case,[2] the Court

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), John Kelly has been automatically substituted for Jeh Johnson, whom the parties' pleadings name as the defendant.

[2] In addition to the filings already identified, the Court considered the following submissions in reaching its decision: (1) the defendant's Memorandum in Support of Defendant's Motion to Dismiss and for Summary Judgment ("Def.'s Mem."); (2) the Plaintiff's Memorandum of Points and Authorities (1) in Support of Plaintiff's Cross-Motion for Summary Judgment, (2) in Opposition to Defendant's Motion to Dismiss, and (3) in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mem."); (3) the Defendant's Memorandum in Opposition to Plaintiff's Cross Motion for Summary Judgment and Reply to Plaintiff's Opposition to Motion to Dismiss and

(continued . . . )

concludes that it must grant in part and deny in part the defendant's motion to dismiss, deny the plaintiff's motion for summary judgment, and enter summary judgment in favor of the defendant.

## I.     BACKGROUND

### A.     Events Leading to the Plaintiff's Discharge

The plaintiff enlisted in the Coast Guard on July 27, 1999, AR 0225, and his

military record contains several awards and letters of appreciation highly praising his excellent performance and hard work as a[ machinery technician]. His record also contains documentation showing that in 1999 and 2000 he was counseled on Page 7s[3] many times about unacceptable behavior, including insubordination, argumentativeness, apathy, provocative and contemptuous language, and ignoring military customs and courtesies. He was also placed on performance probation and awarded nonjudicial punishment (NJP) at mast in 2000 because of such behavior. In 2001, the [plaintiff] received another Page 7 for disrupting work with sarcasm, provocative language, and resentment, and he was referred for anger management training. However, there are no negative entries in his record from 2002 to December 2006.

AR 0225.

On December 8, 2006, while stationed in Miami, Florida, <u>see</u> Compl. ¶ 13; Def.'s Mem. at 4, the plaintiff was arrested and charged with battering and kidnapping his wife, and detained for two weeks by Florida state authorities. AR 0225-0226; Compl. ¶ 15. These charges were subsequently dismissed. AR 0017. "On December 29, 2006, [the plaintiff's commanding officer] issued a Military No-contact Order requiring the [plaintiff] not to have any contact with his wife for 30 days except during formal marriage counseling sessions through the Work

---

( . . . continued)
Motion for Summary Judgment ("Def.'s Reply"); (4) the Plaintiff's Reply Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Reply"); and (5) the Joint Appendix consisting of portions of the administrative record compiled in this case ("AR").

[3] "Page 7s" are official comments entered on a service member's record. <u>See</u> Def.'s Mem. at 4 n.4.

Life/Employee Assistance Program (EAP)."  AR 0226.  Thereafter, "the Family Advocacy

Specialist handling his case [ ] determined that the allegations of spousal abuse . . . had been

substantiated . . . [and] the command renewed the no-contact order and made it indefinite until

rescinded."  AR 0226.

On February 27, 2007, the plaintiff was charged "with failing to obey the no-contact

order in violation of Article 92 of the [United Code of Military Justice]."  AR 0226.  On March

8, 2007, after an investigation into the charge, the plaintiff received

> as nonjudicial punishment [a] reduction in pay grade . . . , restriction to base for two
> weeks, and two extra hours of duty per day for two weeks.  On a performance
> evaluation prepared pursuant to the [nonjudicial punishment], the applicant
> received high marks in certain categories, such as professional knowledge and
> stamina, but low marks for communicating, working with others, responsibility,
> setting an example, military bearing, customs and courtesies, integrity, loyalty,
> respecting others, and judgment.  He was not recommended for advancement.

AR 0227.  The plaintiff was also put on performance probation for "failure to obey direct orders,

lack of attention to detail, and [his] argumentative and disrespectful behavior."  AR 0227.  The

plaintiff's commanding officer warned the plaintiff "that if he failed to make an effort to

overcome his deficiencies or violated the conditions of the probation, the [commanding officer]

would initiate his discharge."  AR 0227.  The plaintiff appealed his nonjudicial punishment, but

his appeal was denied.  See AR 0227, 0229.

On March 15, 2007, the plaintiff filed "an informal complaint of religious discrimination

and retaliation" on the part of his supervisor.  AR 0228; see also AR 0224.  "On March 30, 2007,

the [plaintiff] filed a formal complaint of discrimination and retaliation after a meeting with his

chain of command and a District mediator the day before had not resolved his complaint." AR 0229.[4]

The plaintiff received additional Page 7s on March 20, 2007, for failure to obey a direct order to report for duty at 7:00 a.m. that morning, see AR 0229, and on April 9, 2007, for "showing direct disrespect and insubordination," AR 0230. Also on April 9, 2007, the plaintiff was charged with failure to obey an order and absence without leave. See AR 0230. On April 16, 2007, after an investigation of the two April 9, 2007 charges, the plaintiff received "two weeks of restriction to base and extra duties," and was told "that he was being processed for a General discharge because of continued misconduct." AR 0231. The plaintiff was told "that he had a right to consult a lawyer and to submit a statement on his own behalf." AR 0231.

## B.  The Plaintiff's Discharge Process

On April 17, 2007, the plaintiff's commanding officer issued a memorandum to the plaintiff informing the plaintiff that he supported the plaintiff's general discharge. See AR 0231. The commanding officer "again advised the [plaintiff] that he had a right to consult a lawyer and to submit a statement on his own behalf. [The commanding officer] told the [plaintiff] to submit his statement within three days and that the statement would be forwarded with the recommendation for separation." AR 0231–0232.

> [L]ater that day, the [plaintiff] signed a modified acknowledgement form with a note stating that he would contact a lawyer that day and would submit a statement within three working days. In response, the Personnel Command advised the sector to be sure that the [plaintiff] knew he had five days from the date of notification to submit his statement and that the Sector should inform them when the [plaintiff] had spoken to an attorney.

* * *

---

[4] The plaintiff "did not submit [to the Board] a copy of the Final Agency Decision on his [equal employment opportunity] complaint," AR 0225, and thus, that complaint is not part of the administrative record in this case. The plaintiff does not pursue his retaliation claim before this Court. See generally Compl.

On April 19, 2007, the Sector Chief of Logistics sent an email to the Personnel Command stating that the [plaintiff] had consulted an attorney and had had ample opportunity to prepare his rebuttal statement but had not yet done so. She requested authority to discharge the [plaintiff]. She stated that she would "like to see [discharge] orders tomorrow."

On April 20, 2007, a chief warrant officer at the Sector sent an email to the Personnel Command inquiring into the status of the [plaintiff's] discharge. He noted that the [plaintiff] had not yet submitted a rebuttal statement although he "has been given ample time to work on it (no other work except to work on his statement)."

Also on April 20, 2007, the Coast Guard Personnel Command issued separation orders authorizing the [plaintiff's] General discharge "by reason [of] misconduct due to [involvement] of a discreditable nature with civil or military authorities." The orders required use of the separation code JKA, which denotes an involuntary discharge due to a "pattern of misconduct."

On April 23, 2007, the [plaintiff] received a General discharge from the Coast Guard. His original [discharge papers] showed that he received an RE-4 reenlistment code (ineligible for reenlist) and a JKA separation code, reflecting separation due to a "Pattern of Misconduct" pursuant to Article 12.B.18 of the Personnel Manual.

AR 0232–0233.

## C.   The Discharge Review Board and the Upgrade of the Plaintiff's Discharge and Reenlistment Code

After the plaintiff was discharged from the Coast Guard, he applied to the Discharge

Review Board to upgrade his discharge and reenlistment code. AR 0234. Although the

Discharge Review Board recommended that the plaintiff's discharge "should stand as issued,"

AR 0100, the Commandant disagreed "due to a procedural flaw in [the plaintiff's] discharge,"

AR 0099, 0235. The Commandant corrected the plaintiff's record to show an Honorable

discharge "for Miscellaneous/General Reasons," but did not upgrade the plaintiff's reenlistment

code. AR 0099, 0235. The Commandant did not explain the "procedural flaw" that he found in

the plaintiff's discharge in his Memorandum, see AR 0099, but the Board subsequently

determined that "the Commandant's decision to upgrade the [plaintiff's] discharge to Honorable

and his narrative reason for separation to 'Miscellaneous/General Reasons' appears to have been based on a finding of error concerning the processing of the [plaintiff's] rebuttal statement," AR 0039. The Board stated that "it appears that the Personnel Command may not have received [the rebuttal statement] nor reviewed it before issuing the [plaintiff's] discharge orders." AR 0254.

## D.      The Board's Decisions

Thereafter, the plaintiff "filed an application with [the Board] requesting a change in the reenlistment code from RE-4 (ineligible to reenlist) to RE-1 (eligible to reenlist)." Compl. ¶ 44; see also Def.'s Mem. at 11.[5] The plaintiff alleged that "his chain of command railroaded his discharge . . . in retaliation for his decision to file a formal [equal employment opportunity] complaint against his supervisor, who had harassed him because of his religion." AR 0016. The Board denied his request on August 20, 2009. See AR 0016, 0041. The plaintiff then filed a request for reconsideration of the Board's decision on September 4, 2009, based on the submission of additional evidence—the complete report of investigation of the plaintiff's equal opportunity complaint—as well as the "legal and factual errors made on behalf of the [ ] [B]oard." See AR 0276. The Board denied the plaintiff's request for reconsideration on May 27, 2010. See AR 0224, 0256.

## E.      This Civil Action

On May 6, 2016, the plaintiff filed his Complaint in this case. See Compl. at 1. Count I of the Complaint alleges that the Board's "determination that [the plaintiff's] separation was not wrong, unlawful, in error, or unjust was in violation of [Coast Guard] rules, regulations, and

---

[5] In his Complaint, the plaintiff states that he filed his application with the Board in "early 2009" and that, in addition to requesting a change in his reenlistment code, he also requested that "his rank be returned to MK2/E-5." See Compl. ¶ 44. The plaintiff's application to the Board, however, was filed on August 8, 2008, see AR 0220, before the Commandant corrected the plaintiff's record to show an Honorable discharge, see AR 0099, and the plaintiff's application only included a request for an upgrade to an Honorable discharge and a change to his reenlistment code, but not a request for a change in his rank, see AR 0220.

policies." Id. ¶ 52.  Count II alleges that the Board's decision "was in violation of well-

established constitutional protections due to [the plaintiff] under the Fifth and Fourteenth

Amendments." Id. ¶ 76.  Count III alleges that "[the Board's] decision to not correct [the

plaintiff's] record was arbitrary, capricious, and an abuse of discretion." Id. at 13.  The

defendant seeks the dismissal of Counts I and II of the plaintiff's Complaint under Rule 12(b)(1)

of the Federal Rules of Civil Procedure because these claims are time-barred, "implicate non-

justiciable military personnel decisions[,] and seek relief that the Court does not have the

authority to grant." Def.'s Mem. at 2–3.  In addition, the defendant asserts that Count II should

be dismissed pursuant to Rule 12(b)(6) because the plaintiff fails to state a valid due process

claim upon which relief may be granted. See id. at 3.  Both parties have also filed motions for

summary judgment. See Def.'s Mot. at 1; Pl.'s Mot. at 1.

## II.     STANDARDS OF REVIEW

### A.     Federal Rule of Civil Procedure 12(b)(1)

Federal district courts are courts of limited jurisdiction, Kokkonen v. Guardian Life Ins.

Co., 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of Civil

Procedure] 12(b)(1) 'presents a threshold challenge to the court's jurisdiction,'" Morrow v.

United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions,

835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, a district court is obligated to dismiss a claim if it

"lack[s] . . . subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  Because "[i]t is to be

presumed that a cause lies outside [a federal court's] limited jurisdiction," Kokkonen, 511 U.S. at

377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a

district court has subject-matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561

(1992).

In deciding a motion to dismiss for lack of subject-matter jurisdiction, the district court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction [over] the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, a district court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion' for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 1998)).

## B.      Federal Rule of Civil Procedure 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a motion to dismiss for "failure to state a claim upon which relief may be granted," Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also Kowal v. MCI

Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that the plaintiff is entitled to "the

benefit of all inferences that can be derived from the facts alleged").   Although the Court must

accept the facts  pleaded as true, legal allegations devoid of factual support are not entitled to this

assumption.  See, e.g., Kowal, 16 F.3d at 1276.  Along with the allegations made within the four

corners of the complaint, the court may also consider "any documents either attached to or

incorporated in the complaint and matters of which [it] may take judicial notice."  EEOC v. St.

Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**C.      Summary Judgment Under the Administrative Procedure Act**

"The Secretary of Homeland Security may . . . correct any military record of the Coast

Guard . . . through boards of civilians" "when the Secretary considers it necessary to correct an

error or remove an injustice."  10 U.S.C. § 1552(a)(1).

> Although judicial review is available under the APA to review correction-board
> decisions, courts apply an "unusually deferential application of the arbitrary or
> capricious standard of the APA" to ensure that "the courts do not become a forum
> for appeals by every soldier dissatisfied with his or her ratings [and thereby]
> destabilize military command and take the judiciary far afield of its area of
> competence."

Rudo v. Green, 818 F. Supp. 2d 17, 24–25 (D.D.C. 2011) (alteration in original) (quoting

Musengo v. White, 286 F.3d 535, 538 (D.C. Cir. 2002)).  Accordingly, the Court must determine

only whether the Secretary's decision not to take corrective action "is flawed for one or more of

the reasons enumerated in 5 U.S.C. § 706(2), not whether the decision was correct."  Lebrun v.

England, 212 F. Supp. 2d 5, 14 (D.D.C. 2002) (Walton, J.) (citing Kreis v. Sec'y of Air Force,

866 F.2d 1508, 1511 (D.C. Cir. 1989)).  Therefore, "the agency must examine the relevant data

and articulate a satisfactory explanation for its action including a 'rational connection between

the facts found and the choice made.'"  Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut.

Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quoting Burlington Truck Lines v. United States, 371

U.S. 156, 168 (1962)).  "Courts 'will uphold a decision of less than ideal clarity if the agency's

path may reasonably be discerned.'"  <u>Pub. Citizen, Inc. v. FAA</u>, 988 F.2d 186, 197 (D.C. Cir.

993) (quoting <u>Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.</u>, 419 U.S. 281, 286

(1974)).  The District of Columbia Circuit has noted that "[p]erhaps only the most egregious

decisions may be prevented under such a deferential standard of review."  <u>Kreis</u>, 866 F.2d at

1515.

### III.      ANALYSIS

**A.      Subject Matter Jurisdiction and Justiciability of Counts I and II**

   **1.      Statute of Limitations for Counts I and II**

   28 U.S.C. § 2401(a) provides, in relevant part, that a "civil action commenced against the

United States shall be barred unless the complaint is filed within six years after the right of

action first accrues."  Section 2401(a) applies to an APA claim, which "'first accrues,' within the

meaning of § 2401(a), as soon as (but not before) the person challenging the agency action can

institute and maintain a suit in court."  <u>Spannaus v. U.S. Dep't of Justice</u>, 824 F.2d 52, 56 (D.C.

Cir. 1987) (quoting 28 U.S.C. § 2401(a)).  In <u>Spannaus</u>, the District of Columbia Circuit noted

that, "[u]nlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached

to the government's waiver of sovereign immunity, and as such must be strictly construed."  <u>Id.</u>

at 55; <u>see also</u> <u>P & V Enters. v. U.S. Army Corps of Eng'rs</u>, 516 F.3d 1021, 1026 (D.C. Cir.

2008) (affirming <u>Spannaus</u>).  "Because this statute of limitations is jurisdictional, neither waiver

nor equitable tolling is applicable."  <u>Horvath v. Dodaro</u>, 160 F. Supp. 3d 32, 43 & n. 9 (D.D.C.

2015) ("In <u>United States v. Kwai Fun Wong</u>, [ __ U.S. __, __, 135 S. Ct. 1625, 1632 (2015),] the

Supreme Court recently held that [the] statute of limitations with respect to the Federal Tort

Claims Act in 28 U.S.C. § 2401(b) was not jurisdictional . . . .  Nonetheless, because the D.C.

Circuit Court of Appeals has explicitly held that [§] 2401(a) is jurisdictional, see Spannaus, 824 F.2d at 52, and because the Supreme Court's holding in Wong is limited to the [§] 2401(b), Circuit precedent remains binding on this Court").

The defendant argues that Counts I and II of the plaintiff's Complaint should be dismissed because they are time-barred under § 2401(a).  See Def.'s Mem. at 18–21; see also Def.'s Reply at 2–4.  Specifically, the defendant asserts that Counts I and II challenge the plaintiff's original discharge in April 2007, rather than the Board's decision upholding the discharge on May 27, 2010, and thus, the six-year statute of limitations expired in April 2013, over three years before the plaintiff filed his Complaint on May 6, 2016.  See Def.'s Mem. at 19–20; Def.'s Reply at 2.  The plaintiff argues that Counts I and II challenge the Board's decision, not his original discharge, and therefore, these claims were filed timely.  See Pl.'s Mem. at 9–10.

The Court agrees with the plaintiff that Counts I and II are not time-barred.  Although the defendant is correct that both counts contain a "litany of allegations against the discharge process," Def.'s Mem. at 20; see also Compl. ¶¶ 53–73, 77–94, each count also contains a specific allegation that the Board's decision was, in the case of Count I, "in violation of [Coast Guard] rules, regulations, and policies," Compl. ¶ 52, and, in the case of Count II, "in violation of well-established constitutional protections due to [the plaintiff] under the Fifth and Fourteenth Amendments," id. ¶ 76.  Both of these claims are proper under the APA, see 5 U.S.C. § 706 (permitting a district court to "hold unlawful and set aside agency action . . . found to be . . . not in accordance with law [or] contrary to constitutional right"), and the Court is satisfied that these allegations "sufficed to put the defendant on notice as to the nature of the claim against him and the relief sought," see Twombly, 550 U.S. at 574, particularly because the defendant was able to respond to both of these claims on the merits, see Def.'s Mem. at 28–34, Def.'s Reply at 11–12.

11

Given the Court's obligation to "construe the complaint liberally in [the plaintiff's] favor in accordance with the standard of Federal Rule of Civil Procedure 8(a)," see Wuterich v. Murtha, 562 F.3d 375, 383 (D.C. Cir. 2009), as well as the procedural posture of this case, see Ass'n of Civilian Technicians, Inc. v. United States, 601 F. Supp. 2d 146, 158 & n.12 (D.D.C. 2009) (crediting the "[p]laintiffs' assertion that they are in fact seeking relief pursuant to the APA" despite "the nebulous nature of the Complaint," and declining to require the plaintiffs to file an amended Complaint, because "the filing of an amended Complaint is obviously unnecessary" "given the disposition of this case on the parties' Cross-Motions for Summary Judgment"), the Court concludes that Counts I and II are challenges to the Board's decision, not the underlying discharge, and thus are timely because the Complaint was filed within six years of the Board's decision.[6]

### 2.     Justiciability of the Relief Sought

In his Complaint, the plaintiff seeks judgment in his favor and a court order directing the Coast Guard to (1) upgrade his RE-4 reenlistment code; (2) restore him to active duty with all back pay, entitlements, and credit for time served; and (3) pay his remaining enlistment bonus of $4,240.60. See Compl. at 14. The defendant argues that the plaintiff's requests for relief, with the exception of the plaintiff's request that the Board's decision be ruled a violation of the APA, constitute relief that the Court does not have the authority to grant. See Def.'s Mem. at 23.

The Court agrees that its authority is limited to determining whether the Board's decisions violated the APA, and, if so, the relief the Court may award is limited to remanding the

---

[6] Because the Court determines that Counts I and II of the plaintiff's Complaint challenge the Board's decision and not the merits of the plaintiff's underlying discharge or the events leading up to the discharge, the defendant's argument that the plaintiff's claims are non-justiciable because he "challenges the merits of the Coast Guard's decision to discharge [the p]laintiff," see Def.'s Mem. at 23, is moot because the Court agrees with the plaintiff that he is not challenging his underlying discharge, see supra at Part III.A.1.

Board's decision to the Board.  Another member of this Court has stated that, upon finding that the Board's "decision violated the APA, the Court would vacate and remand the Board's decision; the Court would not tell the Board how to decide on remand."  Bates v. Donley, 935 F. Supp. 2d 14, 27 (D.D.C. 2013) (refusing to order the Board to, among other things, upgrade the plaintiff's discharge status and credit the plaintiff with back pay and allowances); see also Sakievich v. United States, 160 F. Supp. 3d 215, 220, 221 (D.D.C. 2016) (noting that the Court's authority was limited to "review [of] the [Board's] decisions for reasonableness," and therefore, it could not "grant [the] plaintiff active duty status he did not have"), appeal docketed, No. 16-5072 (D.C. Cir. Apr. 11, 2016); Remmie v. Mabus, 846 F. Supp. 2d 91, 95 (D.D.C. 2012) (noting that "the Court cannot order reenlistment" in the military).  Consequently, the Court does not have the authority to upgrade the plaintiff's reenlistment code or restore him to active duty with all corresponding benefits.[7]

## B. The Plaintiff's Due Process Claim

As noted above, Count II of the plaintiff's Complaint alleges that the Board's decision violated the plaintiff's due process rights.  See Compl. ¶ 76.  Specifically, the plaintiff contends that the Board's "failure to find [that] the [Coast Guard's] procedure and process in discharging [him] violated the [Coast Guard Personnel] Manual and the Constitution is . . . a violation of [his] due process rights."  Pl.'s Mem. at 30; see also Compl. ¶¶ 76–95.  The defendant argues

---

[7] Because the Court concludes that it does not have the authority to order the Coast Guard to restore the plaintiff to active duty, the plaintiff's request for a Court order directing the Coast Guard to pay his remaining enlistment bonus of $4,240.60 also fails because payment of that remaining bonus is conditioned on the plaintiff's continued enlistment.  See AR 1116.  Thus, the Court need not consider the plaintiff's argument that it has jurisdiction over his request for his remaining enlistment bonus under the Little Tucker Act.  See Pl.'s Mem. at 12.  The Court notes, however, that the plaintiff only cited the APA, not the Little Tucker Act, as the basis for the Court's jurisdiction in his Complaint, see Compl. ¶¶ 3–7, and "[u]nder the APA, a plaintiff may [only] sue the United States 'in the district courts for remedies other than money damages arising from an agency's unlawful action,'" Martin v. Donley, 886 F. Supp. 2d 1, 7–8 (D.D.C. 2012) (Walton, J.) (quoting Bublitz v. Brownlee, 309 F. Supp. 2d 1, 5 (D.D.C. 2004)).

that the plaintiff has no valid liberty or property interest that the Board could have deprived.  See Def.'s Mem. at 25–27.

"[D]ue process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  McManus v. District of Columbia, 530 F. Supp. 2d 46, 72 (D.D.C. 2007) (citing Mathews v. Eldridge, 424 U.S. 319, 323 (1976)).  Thus, "[f]or a plaintiff to survive a motion to dismiss under Rule 12(b)(6), he must allege, at a minimum, that he has been deprived of either a life, liberty, or property interest protected by the due process clause."  Id. (citations omitted).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Id. (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)).  "These entitlements are created by sources independent of the Constitution."  Smith v. Harvey, 541 F. Supp. 2d 8, 15 (D.D.C. 2008).  The Court agrees with the defendant, see Def.'s Mem. at 26, that the plaintiff has "no protected property interest in continued military service," Spadone v. McHugh, 864 F. Supp. 2d 181, 189 (D.D.C. 2012) (quoting Wilhelm v. Caldera, 90 F. Supp. 2d 3, 8 (D.D.C. 2000)), nor in "the employment benefits that come with military service," Smith, 541 F. Supp. 2d at 15.  Here, the plaintiff alleges that he "has a property interest in the final two payments of his . . . enlistment bonus totaling $4,240.60."  Pl.'s Mem. at 28.  These payments, however, were conditioned on the plaintiff's continued enlistment, see AR 1116, and "property interests arise in specific benefits that a person has already acquired," Rudo v. McHugh, 931 F. Supp. 2d 132, 143 (D.D.C. 2013),

not in benefits that one is "seeking to acquire," id.  Accordingly, the plaintiff has not asserted a cognizable property interest in his remaining enlistment bonus.

In addition to protecting property interests, "[t]he Due Process Clause . . . forbids arbitrary deprivations of liberty.  'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' the minimal requirements of the Clause must be satisfied."  Goss v. Lopez, 419 U.S. 565, 574 (1975) (quoting Roth, 408 U.S. at 573).  "A government employee may have a liberty interest in his employment under one of two theories: (1) a 'reputation-plus' theory, or (2) a 'stigma or disability' theory."  Brown v. McHugh, 972 F. Supp. 2d 58, 66 (D.D.C. 2013) (quoting Okpala v. District of Columbia, 819 F. Supp. 2d 13, 16 (D.D.C. 2011)).  Here, the plaintiff asserts that he has "allege[d] a cognizable liberty interest under the 'stigma or disability theory," because, even though he received an Honorable discharge, "his discharge resulted in a RE-4 reenlistment code and a separation code of 'JND,' which is 'Other, Concealment of arrest record.'"  Pl.'s Mem. at 27–28.  However, the narrative reason associated with the "JND" separation code, is not "Other, Concealment of arrest record," as the plaintiff alleges, see id., but rather "Separation for Miscellaneous/General Reasons," see AR 0094, 0878.  Therefore, because the plaintiff received an honorable discharge, and "the narrative reason for separation" on his updated discharge certificate does not disclose the plaintiff's misconduct, see AR 0878, no stigma or disability to the plaintiff's reputation arises that implicates a cognizable liberty interest.  See Knehans v. Alexander, 566 F.2d 312, 422 (D.C. Cir. 1977) ("[W]hatever 'liberty' interest [the appellant] may have had in his reputation, has not been impinged by the mere fact of his honorable discharge and nonretention in the Army, especially since the reasons for his nonpromotion were never publicly disseminated . . . ." (citations and footnote omitted)); see also Brown, 972 F. Supp. 2d at 66 (determining that the

plaintiff failed to assert a valid liberty interest because he "suffered no reputational harm or stigma because he received an honorable discharge . . . , and has not alleged that [the adverse report in his military record] has become public").  Accordingly, the plaintiff has not asserted a cognizable liberty interest, and his due process claim must be dismissed pursuant to Rule 12(b)(6).

## C.   Review of the Board's Final Decision on Reconsideration

### 1.   The Board's Review of the Plaintiff's Discharge Process

The plaintiff argues that the Board erred by finding that his separation from the Coast Guard was lawful because the Coast Guard violated the Coast Guard Personnel Manual (the "Manual") when it discharged him by "(1) denying [him] an opportunity to consult with counsel, (2) failing to provide [him] the requisite amount of time to respond to the notice of discharge, (3) separating [him] without consideration of his statement, and (4) separating [him] while he was on performance probation."  The Court will consider the Board's review of each of these alleged violations in turn.

### a.   The Opportunity to Consult with Counsel

Article 12B.18.e. of the Manual governs honorable or generable discharges for misconduct of Coast Guard members with fewer than eight years of service.  See AR 0569.  This article states that a commanding officer shall

> [a]fford the member an opportunity to consult with a lawyer as defined by Article 27(b)(1) [of the Uniform Code of Military Justice[8]] if contemplating a general discharge.  If the member requests counsel and one is not available, the commanding officer must delay discharge proceedings until such time as counsel is available.

---

[8] Article 27(b)(1) of the Uniform Code of Military Justice provides: "Trial counsel or defense counsel detailed for a general court-martial . . . must be a judge advocate who is a graduate of an accredited law school or is a member of the bar of a Federal court or of the highest court of a State; or must be a member of the bar of a Federal court or the highest court of a State . . . ."  10 U.S.C. § 827(b)(1) (2012).

AR 0569.

In the plaintiff's rebuttal statement to his commanding officer's memorandum in support

of the plaintiff's discharge from the Coast Guard, which was submitted to and considered by the

Board, see AR 0234, the plaintiff stated:

> I am submitting my response on 19 April 2007 without the benefit of counsel.  It
> was my and my counsel's understanding that my statement was not due until close
> of business on 20 April 2007.  Therefore, my attorney has not had the opportunity
> to review this statement or provide me with legal advice.

AR 0234.  Upon review of this statement, the Board determined that "[t]he record shows that

[the plaintiff] was allowed to consult an attorney but apparently did not have a chance to have

the attorney review his rebuttal statement."  AR 0254.

The plaintiff argues that the Board's conclusion that he had an opportunity to consult

with counsel, as required by the Manual, is "contrary to law" because "[m]erely having the

opportunity to briefly speak to an attorney is not an 'opportunity to consult' with a lawyer."  Pl.'s

Mem. at 19.  The defendant responds that the Board's conclusion was correct because the

plaintiff's "statement that his attorney had not been able to review the statement . . . reflect[s]

that he had, in fact, consulted with a lawyer after being notified of his discharge."  Def.'s Mem.

at 29–30.

The Court agrees with the plaintiff that he did not have an adequate opportunity to

consult with a lawyer as envisioned by the Manual.  The record shows that the plaintiff's rebuttal

statement was submitted "without the benefit of counsel" because the plaintiff and his counsel

assumed that the rebuttal statement was not due until the following day.  See AR 0234.  Because

the plaintiff submitted his statement without the benefit of his attorney "review[ing] []his

statement or provid[ing] [him] with legal advice," see AR 0234, the Court is unable to conclude

that the plaintiff had a meaningful opportunity to actually discuss the substance of his case with

his attorney.  Accordingly, the Court concludes that the Board's decision that the plaintiff had the opportunity to consult with counsel as required by Article 12B.18.e.3 was arbitrary and capricious.

The Court concludes, however, that the Board's error is harmless.  As noted above, Article 12B.18.e governs only the discharge of members "recommended for honorable or general discharge for <u>misconduct</u>."  AR 0569 (emphasis added).  As noted earlier, on November 12, 2008, the Commandant upgraded the plaintiff's General discharge for a "Pattern of Misconduct" to an Honorable discharge "for Miscellaneous/General Reasons."  <u>See</u> AR 0099.  Accordingly, because the plaintiff's discharge was not for misconduct, the plaintiff was not entitled to the opportunity to consult with counsel and other procedural protections afforded by Article 12.B.18.e.  <u>See</u> AR 0569.  Thus, the Board's error was harmless. <u>See</u> <u>Jicarilla Apache Nation v. U.S. Dep't of the Interior</u>, 613 F.3d 1112, 1121 (D.C. Cir. 2010) ("The harmless error rule applies to agency action because [i]f the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration." (internal quotation marks and citation omitted)); <u>Appleby v. Geren</u>, 330 Fed. App'x 196, 199 (D.C. Cir. 2009) (concluding that, "even if the Board was incorrect in concluding the delay [in the petitioner's promotion] was lawful in all respects, any error was harmless").

**b.  The Requisite Amount of Time to Respond to the Notice of Discharge**

Article 12B.18.e.2 of the Manual states that a commanding officer must "[a]fford the member an opportunity to make a written statement."  AR 0569.  The Board noted in its decision that

> according to the Sector Chief of Logistics, the [plaintiff] was assigned no other duties from April 16 through April 19 except to consult the attorney and write his rebuttal statement.  The [commanding officer] first notified the [plaintiff] of the proposed discharge on a Page 7 dated April 16, 2007, but in his notification

> memorandum dated April 17, 2007, the [commanding officer] gave the applicant three calendar days to submit his statement. However, an email from the Personnel Command dated April 17, 2007, indicates that the [plaintiff] should have had five days. Despite this information, the [commanding officer] prepared his request for discharge and the Sector Chief prepared her endorsement on April 17, 2007, and they apparently forwarded the discharge package to the Personnel Command on April 19, 2007—only two days after the applicant was told that he would have three days to submit his statement. Therefore, it appears that the applicant may have been misled about how long his "opportunity" to submit his discharge rebuttal would be.

AR 0254.

The plaintiff argues that he "was entitled to rely on the [three-day] time period to respond specifically provided in the notice of discharge, and any deviation from that time period is arbitrary and capricious." Pl.'s Mem. at 21. Furthermore, he contends that he "should have been informed of the five-day time period prescribed by the Personnel Command." Id. at 20. The defendant responds that the Board considered the plaintiff's argument, but concluded "that the Manual prescribed only that a member be given an 'opportunity' to respond—without specifying any fixed length of time," and therefore the Board's conclusion that no violation of the Manual occurred should be upheld. See Def.'s Mem. at 29.

The Court agrees with the plaintiff. Even though the Manual does not provide a specific length of time required to make a written statement, see AR 0569, once the commanding officer informed the plaintiff that he was entitled to three days to submit his statement, see AR 0254, the plaintiff was entitled to reply on that representation, see Lefrancois v. Mabus, 910 F. Supp. 2d 12, 21 (D.D.C. 2012) (noting that the Board must follow its own regulations and procedures). However, because the opportunity to make a written statement, like the opportunity to consult an attorney, is only afforded to service members "recommended for honorable or general discharge for misconduct," AR 0569, the Board's error regarding the plaintiff's opportunity in this regard is harmless also because the plaintiff was not discharged for misconduct.

###### c.        The Lack of Consideration of the Plaintiff's Statement

Article 12B.18.e.4.d(1) of the Manual requires the commanding officer to include the

member's written statement in the discharge package sent to the Commander for action.  AR

0569–0570.  The Board noted in its decision that,

> [a]lthough the [plaintiff] dated his rebuttal statement April 19, 2007, it appears that
> the Personnel Command may not have received it nor reviewed it before issuing
> the discharge orders on April 20, 2007.  The rebuttal statement was not listed as an
> enclosure to the [commanding officer's] memorandum and is not included in the
> file labeled "discharge package" in the [plaintiff's] military record.  In addition, the
> Commandant's decision to upgrade the [plaintiff's] discharge to Honorable and his
> narrative reason for separation to "Miscellaneous/General Reasons" appears to
> have been based on a finding of error concerning the processing of the applicant's
> rebuttal statement.  Assuming that the applicant's rebuttal statement was not timely
> considered prior to the issuance of his discharge orders in accordance with Article
> 12.B.18.e of the Personnel Manual, the Board is still not persuaded that his
> discharge was wrong.  Every member of the applicant's chain of command from
> his immediate supervisor up to the Sector Chief of Logistics had found his behavior
> to be unacceptable, and numerous incidents of misconduct, including ongoing
> disrespect, were documented in his record.  Furthermore, the substance of the
> [plaintiff's] rebuttal statement is insufficient to rebut his [commanding officer's]
> allegations of misconduct.  Therefore, it is extremely unlikely that the [plaintiff's]
> rebuttal statement, timely considered, would have prevented his discharge for
> misconduct, and under the Separation Program Designator Handbook, the only
> reenlistment code authorized for members discharged for misconduct is an RE-4.
> Moreover, the Board finds that any negative effect the procedural error could
> theoretically have had on the [plaintiff's] character of discharge and narrative
> reason for discharge has been corrected by the Commandant through the [Discharge
> Review Board].

AR 0254–0255 (emphasis added).

> The plaintiff argues that the Board's decision is arbitrary and capricious because

> [t]he lack of consideration [of his rebuttal statement] prejudiced [him], as he was
> in effect provided no opportunity to respond to his discharge.  This prejudice is
> recognized by the subsequent upgrade to an Honorable discharge.  This change
> evidences that the [Coast Guard's] failure to consider[] [the plaintiff's] rebuttal
> would have impacted his discharge proceedings and his reenlistment code.

Pl.'s Mem. at 22.  The Court disagrees.

The Board's review of the plaintiff's rebuttal statement makes clear that the Coast Guard's error in failing to consider the plaintiff's rebuttal statement was harmless because "the substance of the [plaintiff's] rebuttal statement [wa]s [determined by the Board to be] insufficient to rebut his [commanding officer's] allegations of misconduct." AR 0255; see also Rogers v. United States, 124 Fed. Cl. 757, 767 (2016) (noting that "the military's failure to comply with its procedures for effecting a discharge does not render the discharge itself unlawful where the procedural error is deemed 'harmless' because the regulatory violation did not substantially affect the outcome of the matter"). Thus, the Coast Guard's failure to consider the plaintiff's rebuttal would not, as the plaintiff alleges, "have impacted his discharge proceedings and his reenlistment code." Pl.'s Mem. at 22. The Court agrees with the defendant that the "[p]laintiff [ha]s not identif[ied] a single piece of evidence . . . that the Board failed to consider." Def.'s Reply at 15. And because the Board, upon consideration of the plaintiff's entire record, concluded that the plaintiff's rebuttal statement would not have impacted his discharge proceedings, the Court must defer to the Board's decision that the Coast Guard's failure to consider the plaintiff's rebuttal statement prior to discharging him was harmless. See Caez v. United States, 815 F. Supp. 2d 184, 191 (D.D.C. 2011) (determining, upon review of the evidence, that there was "no indication that the [Board] failed to consider critical evidence or made an irrational decision").

### d.     The Separation of the Plaintiff While on Performance Probation

Article 12B.18.c of the Manual requires commanding officers to "afford a member a reasonable probationary period to overcome deficiencies before initiating administrative discharge action" for certain forms of misconduct. AR 0568. Pursuant to the Manual,

[if] a command contemplates discharging a member for reasons contained in this paragraph, it shall counsel the member a formal probation or treatment period of at

least six months has begun and make an appropriate [Page 7] entry in the member's [record] stating the command will initiate administrative discharge processing unless the member shows significant improvement in overcoming the deficiency during the probationary period. . . .  However, commanding officers are authorized to recommend discharge at any time during the probation if the member is not making an effort to overcome the deficiency.

AR 0568.  The Board noted in its decision that,

[i]n light of the [plaintiff's] repeated violations of the terms of his probation, as documented in the Page 7s and by the [nonjudicial punishment] dated April 16, 2007, the Board finds that the [commanding officer] reasonably concluded that the applicant was not making a reasonable effort to overcome the deficiencies detailed in the probationary Page 7 dated March 8, 2007.

AR0254.

The plaintiff contends that because his discharge was initiated "only a month and a half after [he] was placed on performance probation . . . [, he] was not afforded a reasonable opportunity to overcome any deficiencies" as required by the Manual.  Pl.'s Mem. at 22.  This argument clearly challenges his underlying discharge, not the Board's decision.  In any event, the Board considered whether the plaintiff was afforded a reasonable opportunity to overcome his deficiencies, and concluded that, given the plaintiff's repeated documented misconduct, the plaintiff had failed to "mak[e] a reasonable effort to overcome th[ose] deficiencies."  AR 0254.  In such circumstances, the Manual authorizes commanding officers "to recommend discharge at any time," AR 0568, and thus, the Board's conclusion that the plaintiff's discharge was proper despite his probationary status was not arbitrary or capricious or contrary to law.

## 2.    The Board's Denial of the Plaintiff's Request to Upgrade his Reenlistment Code and Pay Grade

The Board reached the following conclusions regarding the plaintiff's requests for an upgrade of his reenlistment code and pay grade in its decision:

[ ] Under the Separation Program Designator Handbook, someone discharged for "miscellaneous/general" reasons may receive either an RE-1 or RE-

4 reenlistment code.  In light of the [plaintiff's] history of misconduct and disrespect toward his chain of command from January through April 2007, the Board finds that the [plaintiff] has not proved by a preponderance of the evidence that the Coast Guard committed an error or injustice in assigning him the RE-4 code so that he may not reenlist.

[ ] Accordingly, the applicant's requests for relief should be denied because he has not proved by a preponderance of the evidence that his RE-4 reenlistment code or his reduction in pay grade at mast were or are erroneous or unjust.

AR 0255 (footnote omitted).

The plaintiff argues that the Board's "recognition of the procedural errors in the [Coast Guard's] discharge and separation of [the plaintiff] and providing some, but not all, relief is arbitrary and capricious."  Pl.'s Mem. at 23.  According to the plaintiff, "[t]he deficiencies of the proceedings rendered all actions in [his] separation void[, and that t]he Vice Commandant recognized this by upgrading his discharge.  For the same reasons, the reenlistment code should also be upgraded."  Id.  The Court disagrees because the plaintiff cites no authority, see id, nor could the Court find any, that supports his proposition that a procedural deficiency in the discharge process requires granting all relief requested or voids all subsequent decisions made by the Coast Guard.

The Board considered the Vice Commandant's decision to grant the plaintiff partial relief by upgrading his discharge from General to Honorable and determined that, even though the plaintiff was therefore eligible to receive either an RE-1 code (eligible to reenlist) or RE-4 code (not eligible to reenlist), "[i]n light of the [plaintiff's] history of misconduct and disrespect toward his chain of command . . . , the [plaintiff] ha[d] not proved by a preponderance of the evidence that the Coast Guard committed an error or injustice in assigning him the RE-4 code so that he may not reenlist."  AR 0255 (footnote omitted).  The Board clearly considered the plaintiff's request to upgrade his reenlistment code and pay grade and determined that such relief

would be improper considering the plaintiff's disciplinary record.  Therefore, the Court

concludes that the Board properly "examine[d] the relevant data and articulate[d] a satisfactory

explanation for its action[,] including a 'rational connection between the facts found and the

choice made.'"  <u>State Farm</u>, 463 U.S. at 43 (quoting <u>Burlington Truck Lines</u>, 371 U.S. at 168).

This conclusion is especially appropriate considering that the Court's "ability to review matters

related to military discharges is limited, as military personnel decisions themselves lie outside

the [C]ourt's jurisdiction."  <u>Penland v. Mabus</u>, 78 F. Supp. 3d 484, 494 (D.D.C. 2015) (quoting

<u>Burt v. Winter</u>, 503 F. Supp. 2d 388, 390 (D.D.C. 2007)).

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Counts I and II of the plaintiff's

Complaint are timely under 28 U.S.C. § 2401(a) and assert justiciable claims under the APA.

Count II, however, must be dismissed because the plaintiff failed to assert a cognizable liberty or

property interest.  The Court also concludes that although the Board's decisions regarding the

plaintiff's opportunity to consult with counsel and submit a written statement were arbitrary and

capricious, these errors were harmless because these protections are only afforded to service

members discharged for misconduct.  Finally, the Court concludes that the Board's decisions

regarding the consideration of the plaintiff's written statement and his discharge while on

performance probation, as well as the Board's refusal to upgrade the plaintiff's reenlistment code

and pay grade, were not arbitrary or capricious.  Accordingly, the Court will grant in part and

deny in part the defendant's motion to dismiss, deny the plaintiff's motion for summary

judgment, and enter summary judgment in favor of the defendant.

**SO ORDERED** this 8th day of March, 2017.[9]

REGGIE B. WALTON
United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.